## Case No. 4,564.

### EVANS v. JORDAN et al.

[1 Brock. 248;[1] 1 Robb, Pat. Cas. 20.]

Circuit Court, D. Virginia. May Term, 1813.[2]

Before MARSHALL, Circuit Justice, and TUCKER, District Judge.

MARSHALL, Circuit Justice. These cases came on to be heard on demurrers to several pleas in bar which have been filed by the defendants. It is intended to present two questions for the consideration of the court. 1st. Is Oliver Evans entitled to maintain this action against a person who has used his machinery subsequent to the date of his patent, but had constructed it previous to the passage of the act by which his patent was authorized? 2d. Is the case affected by the circumstance, that Oliver Evans had obtained a previous patent for the same discovery, which previous patent had expired before the construction of the machine, for the use of which the present suit is instituted?

This being one of those subjects which is, by the constitution of the United States, delegated entirely to the government of the Union, the question which has been made must depend on the acts of congress. The act of 1793 authorizes the secretary of state to issue a patent to the inventor of any new and useful art, securing to him "for a term, not exceeding fourteen years, the full and exclusive right and liberty of making, constructing, using, and vending to others to be used, the said invention or discovery."[4] This right could not be full and exclusive, if any other person should have a right to make, construct, use, or vend the invention which was the subject of the patent. The 5th section of the same act subjects to a specific penalty "any person who shall make, devise, and use, or sell the thing so invented." The terms "devise and use" being coupled together, it might well be questioned whether, under this law, any person would be subject to the penalty for using a machine which he had not also made or devised. But this doubt is removed by the act of 1800.[5] The 3d sec-

---

[1] [Reported by John W. Brockenbrough, Esq.]
[2] [Affirmed in 9 Cranch (13 U. S.) 199.]

[4] Act to promote the progress of the useful arts, Feb. 21. 1793,—1 Story's Laws, c. 55, p. 300 [1 Stat. 318].
[5] Act April 17, 1800; 1 Story's Laws, c. 25, p. 752 [2 Stat. 37].

tion of that act repeals the 5th section of the act of 1793, and subjects to the damages therein prescribed "any person who shall make, devise, use, or sell," the invention of any other, which that other has secured by a patent. This clause cannot be expressed in terms which would show more conclusively the intention of the legislature to subject each act contained in the enumeration to the penalty of the law, than those which are employed. It has, therefore, been deemed necessary, by the counsel for the defendants, to insist that the obvious construction ought to be overruled, either because it is unconstitutional, or because it is a manifest injustice, which ought not to be ascribed to the legislature.

To subject any person to a penalty for using a machine, the invention of another, which had been constructed anterior to the patent, has been pronounced an ex post facto law, and, consequently, void. But an act which prescribes conditions, under which alone a thing may be used in future, cannot be ex post facto. It attaches neither guilt nor punishment to a past act, but looks forward to future acts, and prohibits the future use of the machine invented by another, without compensating that other for his invention. But it is contended that the injustice of exposing an individual to pay for the use of a machine, a sum which he may deem above its value, or to lose one which has been constructed at considerable expense, when he believed it might be lawfully constructed and freely used, is so glaring, that such a construction ought never, if it can be avoided, to be placed on an act of the legislature. That an act ought so to be construed as to avoid gross injustice, if such construction be compatible with the words of the law, will not be controverted; but this principle is never to be carried so far as to thwart that scheme of policy which the legislature has the power to adopt. To that department is confided, without revision, the power of deciding on the justice as well as wisdom of measures relative to subjects on which they have the constitutional power to act. Wherever, then, their language admits of no doubt, their plain and obvious intent must prevail. In cases of patents, although some injustice may ensue from imposing a price to be paid to the inventor, on the future use of a machine which was constructed before the patent was obtained, yet the great fundamental principles of right, and of property, do not appear to be so vitally wounded as to induce the court to resist and struggle against the obvious meaning of words.

The constitution gives to the legislature a power "to promote the progress of useful arts, by securing, for limited times, to inventors, the exclusive right to their respective discoveries." In the exercise of this constitutional power, the legislature has passed an act, prescribing the mode by which a patent to any invention may be obtained, and giving to the patentee the exclusive right to make, devise, use, or sell it, for fourteen years from the date of the patent. The constitution and law, taken together, give to the inventor, from the moment of invention, an inchoate property therein, which is completed by suing out a patent. This inchoate right is exclusive. It can be invaded or impaired by no person. No person can, without the consent of the inventor, acquire a property in the invention. Whenever, then, previous to a patent, any person constructs a machine discovered by another, he constructs it subject to the right of that other. His right to use it is qualified by the paramount right of the inventor to prescribe the conditions on which he shall use it. Were it otherwise, the exclusive right in the discovery which the constitution authorizes congress to secure to the inventor, and the exclusive right to use it after the date of the patent, which the act of congress confers, would not be exclusive, but would be participated with every person who had constructed the machine previous to the emanation of the patent. If gentlemen will recollect, that this inchoate and indefeasible property in the thing discovered commences with the discovery itself, and is only perfected by the patent subjecting the future use of the machine constructed previous to a patent, to that price which the inventor demands from others for the use of it, his discovery will not appear to be one of those violent invasions of the sacred rights of property, which would justify a court in disregarding the plain meaning of words.

In deciding this first question, it still remains to inquire, whether, from the particular act under which Oliver Evans has obtained his patent, he derives rights as extensive as would have been conferred by the general law. In the enacting part of the law, reference is made to the general act, and it is declared that his patent grants, "for a term, not exceeding fourteen years, the full and exclusive right and liberty of making, constructing, using, and vending to be used, his invention," &c. In the enacting clause, there is found no difference between this particular law and the general law. A patent issued under the one, or the other, confers equal rights. Is this construction varied by the proviso? The first proviso is, "That no person who may have heretofore paid the said Oliver Evans for a license to use his said improvements, shall be obliged to renew the said license, or be subject to damages for not renewing the same." The second is, "That no person who shall have used the said improvements, or have erected the same for use, before the issuing of the said patent, shall be liable to damages therefor." The second proviso has been supposed to comprehend the case at bar. But, surely, this would be extending the proviso far beyond the meaning of the words. Their obvious import is, that no person who shall

have used the said improvements, or have erected the same for use, before the issuing of the said patent, shall be liable to damages for such previous use, or for such previous erection; but this no more excepts the future use of a machine previously erected, from the operation of the enacting clause, than it excepts from that operation a machine to be in future erected. The legislature, knowing that an inchoate right to the exclusive use of his discovery was vested in the inventor, from the moment of discovery, and only perfected by the patent, might deem it necessary to guard against a continuation, which would make this patent relate back to antecedent transactions. This may have been a superfluous caution, but such caution is often found in legislative proceedings. This construction derives additional force from the first proviso. This does away the necessity of renewing licenses purchased under the former patent. The words of the proviso, certainly, apply to all former licenses, for which payment had been made, not to those for which no payment had been made, and shows that the legislature supposed it possible that the effect of the patent would be extended to such licenses. An attempt has been made to impair the influence of this proviso, by its application to cases in which a license had been obtained and paid for, but the machine had not been constructed. There is nothing in the words to justify the idea that the legislature designed to limit their operation to such particular cases; and to suppose their existence requires no inconsiderable effort of the imagination. It is difficult to assign a motive for purchasing, just before the expiration of a patent, a license to use a discovery, which the purchaser did not purpose to erect until the patent should expire.

It is, then, the opinion of the court, that the act for the relief of Oliver Evans, considered independent of any former patent, would authorize him to sustain an action for the use of his invention, after the date of his patent, although the machinery itself had been constructed before its date. Does the existence of a former patent affect the question of law? The court can perceive no ground upon which to rest an affirmative answer to this question. That construction of the constitution which admits the renewal of a patent, is not controverted. A renewed patent, then, has the same obligation, and confers the same rights, with an original patent. The inchoate property which vested by the discovery, is prolonged by the renewed patent, as well as by the original patent. There may be powerful reasons with the legislature for guarding a renewed patent, by restrictions and regulations, not to be imposed on original patents; but these reasons address themselves to the legislature only. If they have been overlooked or disregarded in the hall of congress, it is not for this court to set them up.